All right, looks like council's ready. Let's call 22-2060 United States v. Barela, and it's Corey. Thank you. Mr. Corey, Ms. Roybal. Your Honor, Jesse Barela spent two years in oppressive pre-trial incarceration during a global pandemic, waiting for a trial which only lasted two days. The reason he waited so long was a series of unreasonable and excessive delays which must be attributed to the government. We respectfully submit that the district court erred by failing to appreciate that these unjustifiable delays taken together had the effect of depriving Mr. Barela of his fundamental constitutional right to a speedy trial. I'd like to focus on three areas of delay which the district court ignored, but which cannot be ignored. First of all, we have a 10-month delay between Mr. Barela's arrest and the return of a federal indictment in the United States District Court. We have pretty strong case law, don't we, that suggests that's not attributable to the government. What's your take on that authority? Your Honor, if the government had offered the reasons which are offered in the cases like Seltzer and Garcia, reasons of comedy, reasons of complex prosecution, if they offered any of those, you might be right. But the government never offered those as a reason. The only reason the government offered for the delay of 10 months was that the government was not aware of this shoplifting robbery. That's the only reason, not aware, not aware even though the government had all of the information, all of the evidence it needed to prosecute the case on the date of Mr. Barela's arrest, December 6, 2019. So what would you have had the government issue an arrest warrant at that point and then put a hold on him while he was in state prison? Well, I think it's probably better rather than speculate to look at what actually happened. We had three separate state prosecutions initiated for Mr. Barela and his brother, three. And all three of those federal or state prosecutions were ultimately dismissed in deference to a federal prosecution. So what we would like to have happened is have the government move more expeditiously, bring its federal indictment, allow the state court's cases to be dismissed, and then proceed to a speedy trial. That's not what happened here. What happened here is Mr. Barela spent 10 months in custody at the Bernalillo County Metropolitan Detention Center. He was two weeks out by the prosecution. And with two weeks left, that's when the federal indictment was returned. So I think the government should be called upon to explain why did it take so long? You don't have the luxury of sitting in your office and twirling your thumbs and then say, oh, I think it's about time to indict that chocolatey robbery. The knowledge of this offense, the evidence used to prosecute the to the government under a police team analysis no later than February of 2020. But the indictment was not returned until September 14th. Did the feds know that the state authorities were going to drop the state charges? It doesn't really, it doesn't, the record doesn't really reflect that. But I think it's absolutely a reasonable inference when you have three separate state prosecutions and all three are dismissed in deference to a federal prosecution. It appears that there's a coordination going on that the district court did not focus on. Were both brothers tried together? Yes, sir. The next period of delay is the delay caused by defense counsel who labored under an assert his sixth amendment right and oppose all continuances and counsel's own desire to prepare adequately for a trial. The first time that conflict was resolved against Mr. Borrella and in favor of counsel's own interest was in March of 2021 when counsel indicated that they were still in the process of obtaining discovery. The case had been pending in federal court for six months and defense counsel came with a motion that arguably did not satisfy this court's standards set out in tombs and asked for a 90-day continuance because they were in the process of obtaining discovery and were in the process of conducting an investigation. So even though it had been pending for six months, even though the evidence is basically a surveillance video and 21 defense counsel resolved this conflict in favor of their own interest for trial preparation and against Mr. Borrella's assertion. Why would that though count against the government? Because Mr. Borrella is only responsible in this case for one thing. He is responsible for asserting his right. It is his obligation to assert his right to a speedy trial and once he's done that, he has no obligation to bring himself to trial. He's asserting his rights through counsel in this case until he fires him. But when we look to the third factor, when we look at the defendant's assertion of the right, how can the defendant assert the right if counsel refuses to assert it for him? It makes the entire speedy trial claim disappear unless Mr. Borrella actively, vociferously, forcefully objects and says it did not authorize him to grant that continuance and the court knew that. The court knew that twice. We had two separate lawyers who on two separate occasions resolved that conflict against Mr. Borrella and the assertion of his right to a speedy trial. The third area of delay is caused when because Mr. Borrella asserted his right to a speedy trial, he asked that his retained counsel no longer continue to represent him and counsel asked to withdraw because of a breakdown in communication. That happened in March of 2021 and for the next three months, Mr. Borrella was left with counsel in name only. Trial counsel, retained counsel took no action on the case, filed two separate motions to withdraw one in March and one in May and even at the last hearing on the second motion to withdraw, the magistrate court judge says I'll give you till June 8th to find a replacement attorney. If not, I'm going to appoint an attorney for you. That didn't happen on June 8th. That deadline came and went and it was left to the government in its role as the guardian of the public interest to a speedy trial to point out that Mr. Borrella lacked representation. That was a government statement. In June of 2021, the government filed a motion and said, hey, magistrate judge, Mr. Borrella lacks representation. He does not have the guiding hand of counsel and that delay led to the second time when newly appointed CJA counsel resolved this conflict in favor of preparation instead of a speedy trial. How much time are you attributing to that? Three months. Because your honor, if the standard practice in the district of New Mexico is if a counsel chooses to withdraw retained or not, if the defendant is eligible for CJA counsel, the court will appoint counsel and then tell the defendant, you of course have the right to retain your own counsel, but I want to keep this case on track. I want to keep this case moving forward. That didn't happen here. Was Mr. Borrella looking for private counsel? Mr. Borrella was looking for private counsel. Shouldn't the court defer to that in the first instance? Only when private counsel comes to court, not with the vague hope that in the middle of a pandemic, Mr. Borrella might get lucky to get someone to answer his telephone call from jail. If the district, if the magistrate judge had appointed CJA counsel in March of 2021 instead of in June of 2021, we would not have had that second occasion where an attorney was appointed who had three weeks, three weeks to prepare for a trial. He never met with Mr. Borrella. He never spoke with Mr. Borrella. He knew Mr. Borrella did not want to waive his right to a speedy trial and he waived it anyway. He saw the second continuance. And the only reason he was in that position is because the magistrate judge was at least negligent in not promptly appointing replacement counsel. Your honors, would you look at the four factors, Senator Barker? Well, counsel, before you move on to the four factors, could I ask you just to sum up your math? What time is not attributable to the defendant here? I got the 10 months. So there is the 10 months of initiation. There is a three month period between, excuse me, six month period between his arraignment on the indictment and the first motion to continue in March. That was caused by the COVID crisis. And we're not saying that that's attributed to the government. That's a neutral factor. So that six months was necessary. But after that, the counsels and the magistrate judges ferry to appoint placement counsel. That started first counsel waived the right to a speedy trial. And there was a three month, four month continuance. Interestingly, as we indicated in a footnote, the defendants asked for three months. The trial court gave them four months. So there's that kind of wrinkle. But even the three months was not necessary. If counsel would have used that six months to work expeditiously, review the surveillance tape. We point to our experience when I was appointed, your honor. When I was appointed, I did not waive Mr. Burrell's right to a speedy trial. I gained his confidence and we proceeded to prepare that case for trial in less than three months. So that case could have been prepared by any lawyer in less than three months. It was so straightforward. It was so simple. It's a shoplifting that graduated to a robbery by the use of force. What was his prejudice from the delay? And that your honor is, I'm glad you bring that up because it was profound. We have the impairment of defense. When Mr. Burrell was arrested on December 6th, 2019, his fiance and her friend, her girlfriend testified at the detention here in state court. And that's exhibit two to the government's document 138. They testified and gave Mr. Burrell an alibi. Two years later, when I came into the case, we tried desperately to locate both of those women. We had numbers. I spoke with the fiance. She would not give me her address. She would not tell me where she was. She indicated that she had moved out of the jurisdiction. Two alibi witnesses. Is that in the record? Yes, your honor. Document 138, exhibit two. We'll show you Vanessa Lerner and her friend, I believe Ms. Ford. But it will recount the conversation as you just did. Yes. And then we have my conversations with the witness when we're trying to file a notice of we didn't have the alibi witness. And we explained to the court the difficulties we were having and the steps we took to locate that witness. But those witnesses were lost. Well, don't we need to, for that argument, don't we need to know that the witnesses would have been available within the speedy trial period that you would accept? Oh, they were, Judge. They were available on the day after his arrest. They testified. They were available at that time. And when did they become unavailable? That's an excellent question. All we know is that by the time two years had passed, they were unavailable. And certainly, you're right, Judge. I'm just saying, don't we need, don't we need to know that if they became unavailable the week after the detention hearing, you can't attribute that loss to the speedy trial violation? Certainly not, your honor. So I'm just, it seems like there's a missing fact here. But there is not a missing fact because Vanessa Lerma, the fiancee, was with Julian Barra when he was arrested in February of 2021. So we know that there was at least three months, December, January, February, where this witness was available. And so in addition to the loss of an alibi witness, we had memories fade. We were trying to impeach testifying witnesses about discrepancies in the depiction of the individual in the surveillance camera and Mr. Borrella. And those witnesses said, I don't remember those inconsistencies. It's been too long. Most of all, Judge Eagle, we have that oppressive pre-trial incarceration. In the worst period of time to be in jail, Mr. Borrella lost his job, his home, his fiancee, and his father, in addition to his alibi witnesses, in addition to the fading memories. Under any rubric, the four factors in this case militate in favor of granting the motion, Mr. Borrella was denied his right to a speedy trial. All right. Thank you, counsel. Let's hear from Ms. Roybal. Good morning. May it please the court. Jamie Roybal on behalf of the United States. This appeal concerns one single issue, and that is whether or not Mr. Borrella's Sixth Amendment right to a speedy trial was violated. The district court held that it was not. And after a review of the record, this court should affirm the district court's decision that Mr. Borrella's Sixth Amendment right to a speedy trial was not violated. And as the panel is aware, the first point of contention between the parties is the timing that Mr. Borrella's Sixth Amendment right attached. This court has long held for many, many years that the right attaches when the defendant is arrested or indicted, whichever comes first. And that means a federal arrest or a federal indictment. The court made that clear in the Allen case in 1993. And as recently as February of this year in United States versus Garcia, this court applied that standard as well. Garcia was very similar to Mr. Borrella's case in that it was a shock lifting and that also involved a firearm at a Kmart. And both the federal government and the state governments charged the defendant in that case. That is the similar but different to what happened here. So the state court charged Mr. Borrella here. The United States learned about the case many months later and then proceeded to initiate charges a couple of months. So different from the Garcia case, in that case, the United States there waited about 23 months to initiate the federal charges while the state proceeded with its case. And the federal government initiated charges the day before the defendant was sentenced. That is not what happened here. And so while Mr. Borrella points to a similar situation in the Seltzer case, the simple fact is the United States did not wait for the state court to complete its prosecution before we initiated federal charges. And so the district court properly made a decision that Mr. Borrella's time spent in state custody was not relevant for Sixth Amendment purposes. I'll point the court to the Nixon case as well. And it calculated the delay the same way in the Nixon case. And Nixon also dealt with dual state and federal prosecutions. The state again arrested and charged the defendant first and then the United States charged months later but waited almost a full year to bring the defendant in for initial appearance. And so the court in Nixon, which was a 2019 case, calculated the length of delay from the date of the federal indictment. And so I think the case size is very clear. And so the period of delay that we're talking about here is a total of 13 months. Which is presumptively too long. And could you respond to Mr. Pori's prejudice argument that he was finishing up with? Sure, Your Honor. I will first note that it's Mr. Borrella's burden to prove prejudice. And we just simply don't believe that he's done so. So the case law says that to show harm, a defendant must point to a special harm which distinguishes his case from that of any other arrestee awaiting trial. And so I'd like to focus my comments on the alibi witness. So Mr. Borrella filed a notice of alibi on September the 30th of 2021. And in that notice of alibi, he indicated that his counsel had spoken with the alleged alibi witness that day, September the 30th, in a telephone call. And that the witness called in from a private phone number which was not disclosed to counsel. And in the phone call, the witness refused to provide her address or her telephone number. But they had set up a meeting with counsel in person on October the 1st. And then in his motion to dismiss, which was filed that same day, he acknowledged that he had not lost contact with the alibi witness. And his motion said, well, it only recently appears he may not have lost his alibi witnesses as previously feared. And so certainly the information that the United States had and that the district court had as of end of September was that the alibi witness was available. Now, there are more facts about the alibi witness, which is that the United States alerted the district court to concerns over the alibi witness, specifically the fiance or the ex-fiance testifying, and actually sought to exclude their testimony. And the basis for that was that trial counsel for the United States was going to perjure herself if she, in fact, got on the stand to say that Mr. Abrela had an alibi. And so alternatively, trial counsel asked the district court to conduct an inquiry with that witness if they were to show up to determine whether or not if the witness needed counsel. And so the district court issued an opinion approximately two weeks before trial that stated that if the witness did, in fact, show up that she would be permitted to testify, but the court would conduct an inquiry to determine whether or not the witness needed counsel. And part of the reason for that is, as Mr. Pori has pointed out, one of the very strong pieces of evidence at trial was the surveillance video and then some photographs that showed that this very clearly was Mr. Abrela involved in the robbery. And there was some additional corroborating photos. So he had some very distinct tattoos and a very distinct necklace that he wore. And there were two other photographs that the United States was going to present at trial. One was his license photo, his driver's license photo, where he was wearing that same necklace. And then another was a photo retrieved from Facebook. So all on that basis, there was concerns that if the witness were to show up, there may be some Fifth Amendment problems with their testimony. You know, we went back in preparation for this morning. We also located an email from Mr. Pori, which is not in the record, and we'd be happy to supplement if the panel is interested. But it was as of November 3rd of 2021. So just a few weeks before trial, Mr. Pori said to trial counsel for the government, I am still trying to speak directly with you. You probably shouldn't refer outside the record, but you're welcome to supplement. We'll do. Point being, you know, it did seem that leading up to the trial, the witness that was claimed to be an alibi witness had not in fact been lost. And I think there were other reasons to point to why that witness did not show up for trial. And in the Garcia case, which again was issued earlier this year, the panel noted that, you know, to prove prejudice, the defendant has to show that the government's delay actually caused the witness or the evidence to be lost or the witness to be unavailable. And in this case, Mr. Borrella just simply cannot make that showing. It is not the government's fault that the alibi witness refused to give Mr. Borrella's counsel her phone number. And it's not the United States' fault that the witness refused to show up and meet with Mr. Borrella's counsel on the day that they had planned to make that meeting. And so I think there are many reasons. Can we infer though on this record that if the trial had been held sooner, that witnesses were likely available? They, I think both testified at the detention hearing. Is that correct? Well, your honor, the only time in the record that we can show separate from the briefing on the notice of alibi, but I think the only time in the record that the court can see that the witness was available was right after the arrest, which again, the United States didn't know about, about this robbery at the time that it happened. And it learned about it a number of months later. And so, you know, in terms of Mr. Borrella's burden to prove that the government's delay caused his witness to be lost, I just don't think that's a showing that he can make on this record. Is, I had asked counsel whether the U.S. knew that the state was going to drop state charges if you filed a superseding indictment. What's the record showing that? Your honor, the record just shows that the state deferred to federal prosecution. There's nothing in the record to show any sort of coordination between the two jurisdictions. It is quite common when we adopt charges that initiate or that start in state court. It is, it is common in my experience that the state court will, will abandon its prosecution, so to speak, and, and let the federal court proceed. But even if they had not, the state court could have continued to proceed with its prosecution. And the timing as for six amendment purposes would have still been evaluated from the date of the federal indictment. And what took, what took so long for the federal indictment? Your honor, we, the United States learned about the case in July of 2020 and then initiated charges in early September. And so it was about two and a half months. What do you, what do you mean learned, learned about it? That seems kind of obscure from the record. I wasn't quite sure what that sequence refers to. So in July of 2020 is when Mr. Borrella's brother was formally identified and charged in the robbery. And then at that point it's when Mr. Borrella was identified as the second person who was involved in the robbery. And so, you know, Were there two separate independent investigations? The investigation was handled primarily by state law enforcement officers. And so we learned about it through a federal task force officer who brought it to our office's attention. I'd like to talk, if I could, I see I just have a few moments left, but I'd like to talk about the third factor, which is the defendant's assertion of his speedy trial right. So there is ample evidence in this record that Mr. Borrella claims he forcefully asserted his speedy trial right, but he, you know, he consistently acted in a manner to stall the proceedings. So his first attorney, you know, when he was seeking to withdraw, excuse me, his first attorney noted that counsel had researched and investigated every issue raised by Mr. Borrella, but opted not to file what counsel deemed to be frivolous motions. And at that point, Mr. Borrella asked that he be dismissed from the case. He represented to the district court, both in March and in May of 2021, that he had the finances to be able to hire his own counsel. And then he never did. And so contrary to Mr. Borrella's claim that there was a period of time that he was not represented by counsel, that simply is not true. His first attorney never withdrew until the district court ordered that he get a second attorney. And so while he didn't, I think it's clear from the record, he didn't like his first attorney. He was never left without counsel altogether. Again, he never hired an attorney as he promised he would. And so in June of 2021, the United States asked that counsel be appointed for him. His second attorney, you know, there is this assertion that counsel was putting their own interests above the interests of Mr. Borrella. And I just don't think that that's true. And I don't think that's fair. And the reason is that Mr. Borrella refused all forms of communication with his second attorney. And so after the second attorney was appointed, he mailed Mr. Borrella a letter and he received it back to his office showing that it had been entirely unopened. The second attorney informed the district court that Mr. Borrella had refused to take his phone call. And so there is, you know, this is early July. There's a trial scheduled mid-July. That second defense attorney does not yet have discovery. And his client has refused to talk to him. And so in the same breath, Mr. Borrella says, but I want a speedy trial and my counsel has no right to file any motions on my behalf. And so I think there's, you know, there's plenty of evidence in the record that the court acknowledged and told Mr. Borrella that, you know, the judge felt that this was a delay tactic and it wouldn't be tolerated. There's, you know, at the July 14th hearing, which is in the record at volume one, page 229, the district court engaged Mr. Borrella inequally directly and told him, you know, you need to cooperate with counsel. You need to speak to your counsel. And I think what's important is at no point did Mr. Borrella ever seek to represent himself per se. And so I think at that point, had he done that, he could have filed all of these per se filings and he could have opposed, you know, continuances on his own behalf, but he was working through counsel. He just was not cooperating with counsel. His second counsel noted to the court that his filings were essentially very contradictory because on one hand he was saying, I would like to invoke my right to a speedy trial and I oppose all continuances. And on the other hand, you know, telling his counsel that he really won't even speak to him. And so it put the district court and I believe Mr. Borrella's second counsel in a really difficult situation because everyone also has an obligation to ensure that Mr. Borrella has effective assistance of counsel at trial. So all this to say, you know, I'll point the court again to United States versus Garcia and the court held in that case that a defendant who waited eight months to file a speedy trial motion and filed three continuances totaling 201 days, that Barker factor weighed in favor of the government. And so, you know, it is certainly the United States view that after this court reviews the record in its entirety and conducts a de novo review that you will affirm the district court's decision and find that Mr. Borrella's right to a speedy trial was not violated. Thank you. All right. Thank you, counsel. Both counsel are excused. The case shall be submitted. We appreciate your argument.